**This order is SIGNED.**

**Dated: December 30, 2019**





**WILLIAM T. THURMAN**
**U.S. Bankruptcy Judge**

## IN THE UNITED STATES BANKRUPTCY COURT

## FOR THE DISTRICT OF UTAH

| | |
|---|---|
| In re: | Bankruptcy No. 08-23583 |
| Charles Coulson Waldo and Ethanne S. Waldo, | Chapter 13 |
| Debtor(s). | Honorable William T. Thurman |

## MEMORANDUM DECISION REGARDING MOTION TO REOPEN AND SET ASIDE SUMMARY JUDGMENT PUIRSUANT TO FEDERAL RULES OF CIVIL PROCEDURE 60(d)(3)

This matter came before the Court by way of the Debtor's Motion to Reopen Case Requesting the Court to Use Its Inherent Power to Set Aside Summary Judgment Pursuant to Federal Rules of Civil Procedure 60(d)(3) Due to Fraud upon the Court [Docket No. 203]. The Court conducted oral argument on the matter, the Honorable William T. Thurman, presiding. Charles C. Waldo and Ethanne S. Waldo (collectively the "Waldos") appeared pro se. No other parties entered an appearance or filed a response. The Court reviewed the relevant pleadings and heard argument from the Debtors and incorporates its findings of fact and conclusions of law in this memorandum.

1

### Jurisdiction, Venue, and Notice

The jurisdiction of the Court is properly invoked under 28 U.S.C. §§ 157(b) and 1334. This motion is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(D). The jurisdiction of this Court is not disputed and is hereby determined to be present.

Venue is determined by the Court to be proper pursuant to the provisions of 28 U.S.C. §1408. Venue is laid in the United States Bankruptcy Court for the District of Utah.

The Court notes that while it set this motion for a hearing and noticed out the hearing *sua sponte*, the Waldos did not attempt to notice other parties of interest; thus, notice may not have been complete on the part of the movants. The Court believes that it can still make a ruling on the motion to reopen despite notice being an issue because the motion to reopen a bankruptcy case, for which is the only issue which the Court will address outside of the waiving of filing fees, does not directly affect other parties' interests.

### Background

The Waldos lost their house to foreclosure in 2009. Since 2006, they have vigorously challenged various aspects of the foreclosure in multiple legal proceedings against Ocwen Loan Servicing, LLC (herewithin "Ocwen"), which services the senior mortgage loan held by The Bank of New York Mellon Trust Company, NA (herewithin "Bank of New York") as Indenture Trustee for the IMC Home Equity Loan Owner Trust 1998-7. After previous Utah state court rulings that were averse to the Waldos' positions, they again challenged the validity of the Bank of New York's mortgage interest in their 2008 bankruptcy case filed under chapter 13 of the United States Bankruptcy Code. Shortly after the Waldos bankruptcy case commenced Ocwen filed a claim on behalf of the Bank of New York, the Waldos filed an objection Ocwen's proof of claim alleging,

among other things, that Ocwen and the Bank of New York engaged in misrepresentation, deception, and fraud. *See* Objection to Claim Number 4, Docket No. 20. In turn, the Bank of New York and Ocwen filed a motion for relief of stay and a motion for summary judgment as to the objection of claim issue. *See* Motion to Amend for Summary Judgment, Docket No. 91. The Court consolidated these matters and set them for a hearing. The Court conducted the hearing and granted summary judgment in favor of the Bank of New York and Ocwen. Further, the Court found that the Waldos' 2008 Chapter 13 petition was part of a scheme to delay, hinder, or defraud Ocwen and the Bank of New York, and the automatic stay was terminated in rem, pursuant to 11 U.S.C. § 362(d)(4). Order Granting Summary Judgment, Docket. No. 116.

The Waldos filed a motion to reconsider the Court's summary judgment decision and reopen their bankruptcy case on December 8, 2008; however, the Waldos' bankruptcy case was open at the time the motion was filed. Motion to Reconsider: Regarding Claim No. 4 and Motion to Reopen, Docket No. 121. The bankruptcy case was ultimately dismissed at a confirmation hearing on December 11, 2008. Order Denying Confirmation and Dismissing Case, Docket No. 126. The Court subsequently denied the Waldos' motion to reconsider and reopen on December 23, 2008. Order Denying Debtors' Motion to Reopen and Denying Debtors' Motion for Reconsideration, Docket No. 130. The Waldos then appealed the Court's ruling for dismissing their bankruptcy case at the United State District Court for the District of Utah. While the Waldos appealed the Court's order dismissing the case, the District Court noted that what the Waldos actually sought to appeal was this Court's summary judgment ruling. With that, the District Court dismissed the Waldos' appeal for lack of jurisdiction for not being timely filed. *Charles Coulson Waldo v. Bank of New York Mellon Trust Company NA, et al*. 2009 WL 334440 (D. Utah 2009). In addition to appealing the Court's order dismissing the Case, the Waldos moved in the District

3

Court for a temporary restraining order to stop the foreclosure on their home. The District Court denied their request for a temporary restraining order, and the house was foreclosed on shortly thereafter. *See Charles Coulson Waldo v. Bank of New York Mellon Trust Company NA, et al.* 2009 WL 197653 (D. Utah 2009).

After the District Court dismissed the filed appeal, the Waldos filed various motions to reconsider, reopen, or set aside the summary judgment decision pursuant to Federal Rule of Civil Procedure 60(b)(3)&(6) on similar grounds. Motion to Set Aside Order Granting Summary Judgment and Order Dismissing Ch. 13 Case, Docket No. 144; Motion to Reopen Case, Docket No. 174; Motion to Reconsider, Docket No. 175. These motions were denied. The Waldos then filed a suit in the District Court against Ocwen alleging violation of the Fair Debt Collection Practices Acts, wire fraud in violation of 18 U.S.C. § 1343, and causes for "irreparable harm" and "emotional distress." The Waldos alleged Ocwen committed similar fraudulent activities with regards to their mortgage loan. Without reaching the merits of the Waldos' arguments, the District Court dismissed the case on the basis claim preclusion and the Tenth Circuit Court of Appeals affirmed the ruling. See *Waldo v. Ocwen Loan Servicing, LLC,* 483 Fed. Appx. 424 (10th Cir. 2012).

The Waldos' 2008 bankruptcy case sat dormant for over nine years without any activity. On October 18, 2019, the Waldos filed another motion to reopen their bankruptcy case in order to obtain relief from summary judgment decision pursuant to Federal Rule of Civil Procedure 60(d)(3) due to alleged fraud perpetuated on the Court. The Waldos request the Court to reopen their bankruptcy case, allow extensive discovery, and have the Court conduct an evidentiary hearing. Additionally, the Waldos seek a waiver of filing fees because fraud upon the Court effected their discharge. The Court held a hearing on December 4, 2019 on the Waldos' motions.

4

The Waldos represented themselves *pro se*, with no other parties present at the hearing. With no other parties being present, the Court limited the matter only to the issue of reopening the Waldos' bankruptcy case and whether to waive filing fees incurred by the filing of this motion. Any relief from the Court's summary judgment decision would be premised on the Court reopening the bankruptcy case and would need to be addressed at an evidentiary hearing if the Court reopened the case. The Court took the matter of reopening the Waldos' bankruptcy case under advisement as well as the issue of waiving filing fees.

### Analysis

Section 350(b) of the Bankruptcy Code provides that a case may be reopened "to administer assets, to accord relief to the debtor, or for other cause." "[A]lthough the bankruptcy court has discretion in many instances whether to reopen a bankruptcy case, it is the duty of the court to reopen a case whenever prima facie proof is made that the estate has not been fully administered." *Riazuddin v. Schindler Elevator Corp.* (*In re Riazuddin*), 363 B.R. 177, 183-84 (10th Cir. BAP 2007). The Waldos do not seek to administer assets or accord relief to the debtor, so their motion must establish "other cause" to reopen the case under § 350(b). A bankruptcy court's discretion to reopen "must be tethered to the parameters of § 350(b) or it is an abuse of discretion." *In re Alpex Computer Corp.*, 71 F.3d 353, 356 (10th Cir. 1995). Regardless of the reason, the decision to reopen a case is committed to the sound discretion of the bankruptcy court. *See In re Petroleum Production Management, Inc.*, 282 B.R. 9, 13 (10th Cir. BAP 2002).

Bankruptcy courts consider a number of factors in deciding whether or not to reopen a closed case. Included in those factors are: (1) the length of the time that the case was closed; (2) the nature of the parties' dispute; (3) whether a non-bankruptcy forum has the ability to determine

the issues submitted for consideration; (4) whether any parties would be prejudiced if the case were or were not reopened; (5) the extent of the benefit to any party by reopening; and (6) whether it is clear at the outset that no relief would be forthcoming if the motion to reopen is granted. *In re Soldier Summit Rec. & Dev. Co., L.L.C.*, 2014 WL 98701 (Utah Bankr. 2014); *see also In re Atari, Inc.*, 2016 WL 1618346 (S.D.N.Y Bankr. 2016). These are alternative basis for considering a motion to reopen and one may be compelling while another may be of lesser importance. A heavier consideration of one is sufficient to grant or deny the motion. The moving party has the burden of persuading the Court that there is a compelling reason to reopen a bankruptcy case. See *In re Soldier Summit Rec. & Dev. Co., L.L.C.*, 2014 WL 98701 (Bankr. D. Utah 2014) ("A motion to reopen presents a narrow range of issues, and should only be granted when the moving party demonstrates a compelling reason to do so"). Accordingly, the Court will consider these factors as it determines whether it should reopen the Waldos' bankruptcy case.

The first and most influential factor in the Court's decision whether to reopen the bankruptcy case is the length of time that has gone by since the Waldos' 2008 bankruptcy case was closed. "The longer the time between the closing of the estate and the motion to reopen, the more compelling the reason for reopening the estate should be." *In re Soldier Summit Rec. & Dev. Co., L.L.C.*, 2014 WL 98701 (Bankr. D. Utah 2014) (quoting *In re Owsley*, 494 B.R. 321, 325 (Bankr. E.D. Tenn. 2013). The fact that this case was closed over ten years ago, and it has been over nine years since the Waldos' last attempted to reopen the case weighs heavily against reopening the bankruptcy case. Here, the Waldos seek to reopen their bankruptcy case to request the Court to set aside its summary judgment decision pursuant to Rule 60(d)(3) due to alleged fraud upon the Court. While the Court is sensitive to the serious nature of the allegations of fraud, the fact the Waldos are representing themselves *pro se*, and other personal and logistical

6

complexities that the Waldos may have faced, waiting over a decade before filling this motion is unreasonable. Especially when the Court considers the fact the Waldos filed similar motions to reopen and set aside the summary judgment shortly after the Court closed the case. Further, while the previous motions to reopen and reconsider were brought pursuant to Federal Rule of Civil Procedure 60(b)(3) and (6), which the Court notes is subject to a completely different standard than what is required under FRCP 60(d)(3), the underlying facts are almost identical to the factual basis for their current motion. Even though this is the first time the Waldos have raised the issue of fraud upon the Court, all the facts they assert for formulating the basis for this claim not only could have but should have been presented earlier than ten years after the case closed.

At the hearing the Waldos alleged to have recently discovered documents that prove their allegation of fraud upon the Court. Their argument is unpersuasive for two reasons. First, the allegations of fraud closely mirror the allegations the Waldos have previously made against Ocwen and the Bank of New York. This new motion to reopen appears to be nothing more than recharacterization of arguments the Waldos have made multiple times before. The second reason is that it appears the Waldos were in possession of these asserted recently discovered documents for years. At the hearing, the Waldos attested to the fact on how they discovered this "new" basis for fraud upon the Court was by going through documents in their possession. An alleged ambiguity prompted the Waldos to conduct a larger scale audit of their documents which is where they discovered documents that they claim prove fraud upon the Court. The Waldos mentioned that Ocwen, the Bank of New York, and other parties have not responded to recent requests for documents, likely because there is no ongoing discovery obligation, which leads the Court to believe that the sole basis of the Waldos new claim of fraud stems from documents they have been in possession for years. While complex litigation cases such as the Waldos can be time consuming

and require a lot of attention to detail, parties are expected to act diligently. Had these documents been recently discovered and not in the Waldos possession, the Court might have mitigated this against the great length of time that has passed since the bankruptcy case was closed. However, because the Waldos were in possession of documents for years they have not shown the Court there is a compelling need to reopen their bankruptcy case. Looking back through documents for claims and arguments a party might have failed to raise earlier is not a compelling reason to reopen a bankruptcy case. Accordingly, the Court finds that this factor weighs heavily against reopening the bankruptcy case.

The next factor the Court gives great weight to is whether it is clear at the outset that no relief would be forthcoming if the motion to reopen is granted. Here, summary judgment was entered in favor of the Bank of New York and Ocwen in allowance of a claim and afforded relief from the automatic stay against the Waldos' residence. This decision ultimately allowed Ocwen and the Bank of New York to foreclose on the Waldos' home and eventually sell it to a new owner. Even if the Waldos were successful in their attempt to set aside the summary judgment decision, there is no form of relief for which this Court can grant that would place the Waldos back in their home (however, the Court can only assume that is possibly what the Waldos might want, but have not expressed.) Further, the Court asked the Waldos several times what form of relief they were seeking, and no articulated final result was indicated by them. Even though the Waldos asked to begin extensive discovery, for the Court to conduct an evidentiary hearing on the issue of fraud upon the Court and ask for an order determining that fraud was committed, the Waldos were not able to specifically inform the Court what they ultimately would seek if they were to prevail on the issue of fraud upon the Court. With there being no identifiable form of relief being sought, this factor weighs heavily against reopening the case.

Now as to the factor of the nature of the parties' dispute, the Waldos allege that Ocwen and the Bank of New York perpetrated fraud upon the Court. The Waldos argue that certain documents were fraudulent which Ocwen and the Bank of New York presented to the Court in order to take the Waldos home from them and that the Waldos have documents, specifically documents from the Security Exchange Commission, that prove fraud. While allegations of fraud, especially directed towards the Court, are serious in nature, the Court notes several important aspects about the Waldos' claim that significantly mitigate the seriousness of their allegations. First, the claim of fraud upon the court is overly vague. The Waldos do not articulate or cite to a specific instance that provides some sort of notion that Ocwen or the Bank of New York committed any sort of fraudulent activity towards the Court; rather, the Waldos continued to make assertions that certain documents would prove that a fraud had been committed. While this hearing was not an evidentiary hearing and the Waldos were not required to prove fraud at this initial hearing, they should have outlined their arguments to make a prima facie case for fraud. The Waldos simply kept arguing that they had documents that prove Ocwen and the Bank of New York committed fraud without detailing how these documents proved fraud, and more importantly how this fraud was being perpetrated onto the Court.  Had the Waldos provided the Court with some sort outline or prima facie case of fraud committed upon the Court, it may have been more receptive to their position.

The second and most important aspect of the Waldos' fraud upon the Court claim is that these allegations are nearly identically to the original allegations of fraud against the Bank of New York and Ocwen. Misrepresentation, deception and fraud have always been a large part of the Waldos' accusations against Ocwen and the Bank of New York, the only difference between their past motions and the current one is that the Waldos now argue that this fraudulent activity was directed towards the Court. This may have been a strategic move on the part of the Waldos because

Rule 60(c)(1) imposes a one-year time limitation on Rule 60 (b) motions, which has long since passed. Relief from a judgment because of fraud upon the court pursuant to Rule 60(d)(3) does not have any time listed limitations. *See Zurich N. Am. v. Matrix Serv., Inc.*, 426 F.3d 1281, 1291 (10th Cir. 2005) (The requirements for granting relief from an order or judgment based on fraud on the court are strictly applied because a finding of fraud on the court is "exempt from the one year time-period for filing claims under Rule 60(b)(3)"). It became clear from the Waldos' moving papers and argument thereto, that while they allege the fraud upon the Court the underlying claims of fraud are identical to those they have raised before. At oral argument the Waldos reargued their original claims of fraud, misrepresentation and deception against Ocwen and the Bank of America and the chain of title issue. The Waldos did not address how fraud was committed upon the Court. The Waldos' current motion appears to be a rebranding a claim that has been litigated several times previously. This is important because the doctrines of claim and issue preclusion would likely prevent the Waldos from rearguing any allegations of fraud in their Rule 60(d)(3) motion.

The final issue the Court notes is even if claim and issue preclusion are not applicable and the Waldos were able to persuade the Court that these documents were indeed fraudulent, they would still would not be able to prevail for relief under Rule 60(d)(3). Without going to the merits of the Waldos' Rule 60(d) claim, the Court notes that to grant relief under Rule 60(d)(3) requires: 1) the fraud "'is directed to the judicial machinery itself and is not fraud between the parties or fraudulent documents, false statements or perjury'" *Thomas v. Parker*, 609 F.3d 1114, 1120 (10th Cir. 2010); 2) the fraud involves "'the most egregious conduct, such as bribery of a judge . . . or the fabrication of evidence by a party in which an attorney is implicated'" *Zurich North America v. Matrix Service, Inc*. 426 F.3d 1281, 1291 (10th Cir. 2005)(quoting *Weese v.. Schukman*, 98 F.3d 542, 552-53 (10th Cir. 1996); and 3) the party perpetrating the fraud "acted with an intent to

deceive or defraud the court" *Robinson v. Audi Aktiengesellschaft*, 56 F.3d 1259, 1267 (10th Cir. 1995). While no evidence was presented or admitted at the hearing, the Waldos allege to have documents that all relate to proving certain documents relied on by the Bank of New York and Ocwen were fraudulent. Even if the Waldos were able to prevail in persuading the Court that the documents Ocwen and the Bank of New York relied on were indeed fraudulent, their allegations would at most amount to fraud amongst the parties or the production of fraudulent documents; both of which do not meet the requirements needed to afford relief under Rule 60(d)(3).

Even though a claim of fraud upon the Court is serious in nature, a closer look at the Waldos' claim of fraud suggests that if not identical, it is very closely related to an attempt to relitigate a matter that has been decided. Even if the Waldos were able to prove their allegations of fraud, they would still not be able to meet the standard need to prevail under Rule 60(d)(3). Accordingly, the Court finds that this factor weighs against reopening the bankruptcy case.

The factor of whether there is another court that could determine the issues being presented also weighs against reopening the Waldos' bankruptcy case. At the hearing, the Waldos made allegations that could be construed as the makings of causes of actions; however, none of these causes of action uniquely require this Court to preside over those alleged claims. At the hearing, the Waldos acknowledged that either they have or will be filing claims in other courts that are similar in nature or somehow connected with the attempt to reopen their bankruptcy case. Further, the Waldos made their intentions known by alluding to a desire for an order from this Court for a finding of fraud so that they could persuade other courts on their fraud claims. In effect, the Waldos are not only aware that there are other courts available to them that might afford them relief they ultimately seek but are actively or intending to pursue those avenues. The sole basis, it appears, for the Waldos coming before this Court is to obtain a ruling that would then be used to  persuade

other courts. With the Waldos seeking no forms of relief for which this Court can grant and their reasoning for why they seek relief from this Court's decision on a motion for summary judgment, the Court is persuaded that not only are there multiple other venues for which the Waldos could (or currently are) asserting their fraud claims, but these venues are likely more proper. Accordingly, this factor weighs against reopening the case.

As to whether any party would be prejudiced, the Court believes this factor weighs against reopening the bankruptcy case as well. No party was present to argue this at the hearing and accordingly, the court's statements here are premised on its knowledge of the general costs and burdens for which are incurred in most civil cases. With that said, this bankruptcy case and the heart of the Waldos' arguments and allegations have been heavily litigated not only in the Waldos' bankruptcy case but also in numerous other state and federal court actions. To continue to have Ocwen and the Bank of New York relitigate the same issues premised under a thinly veiled fraud upon the court claim could well be prejudicial to them for financial and non-financial reasons. Further, the fact that ten years has passed since the bankruptcy case has been closed and even longer since the Court made its ruling on the objection to claim and summary judgment motion, means that in addition to having Ocwen and the Bank of New York relitigate an issue they would likely need significant time to find documents and prepare for litigation that has already reached its conclusion. This is not the most compelling factor, but the Court mentions it as there could well be prejudicial to others if the Court were to reopen the case.

As to the final factor of whether the movant would be prejudiced if the case was not reopened, the Court believes that any benefit the Waldos would receive by reopening their case would be nominal and heavily outweighed by the prejudice the other parties would incur.  As previously stated, the Waldos' home has been foreclosed upon, sold, and there is no form of relief

that would allow the Court to put the Waldos back in their home. Further, the Waldos do not seek any forms of relief for which this Court can grant. If the Court were to reopen the Waldos' bankruptcy case, conduct an evidentiary hearing, and overturn its previous ruling, it places them in no better position than they are currently in. While there might be some nominal benefit to reopening the bankruptcy case, the benefit gained is outweighed tremendously by the prejudice reopening would have on Ocwen and the Bank of New York. Accordingly, the Court believes that reopening the case provides no identifiable benefit to the Waldos. *See Jester v. Wells Fargo Bank N.A.* (*In re Jester*) 2015 WL 6389290 (10th Cir. BAP 2015) ("If substantive relief cannot be granted, the reopening a case would be futile and a waste of judicial resources").

Since the factors weigh against reopening the Waldos' 2008 bankruptcy case, the Court denies the Waldos' motion to reopen their bankruptcy case in order to pursue relief from the Court's summary judgment ruling pursuant to Rule 60(d)(3). The only issue the Court needs to address now is the issue of whether to waive filing fees.

The Bankruptcy Court Miscellaneous Fee Schedule expressly grants discretion to courts to waive reopening fees under appropriate circumstances. 28 U.S.C.S. § 1930. The Debtor must show that appropriate circumstances exist. *See In re: Knight*, 349 B.R. 681, 686 (Bankr. Idaho 2006). In their moving papers, the Waldos allege that their discharge was affected by the fraud directed towards the Court. The issue of waiving fees was only briefly mentioned at the hearing and the Waldos did not argue for that at the hearing. However, the Court will give the Waldos the benefit of the doubt and waive the filing fees that were incurred by the filing of this motion. The Court notes that it has waived the filing fees for the Waldos' previous motions to reopen, reconsider, and to set aside the summary judgment. In the event the Waldos continue filing motions similar to these, then the Court will require a strong showing of why filing fees should be waived.

**Conclusion**

In conclusion, the Court denies the Waldos' motion to reopen their 2008 bankruptcy case in order to seek relief from the Court's summary judgment decision under Rule 60(d)(3) and the Court grants the Waldos' request for waiving filing fees.

14

## DESIGNATION OF PARTIES TO RECEIVE SERVICE

Service of the foregoing **MEMORANDUM DECISION REGARDING MOTION TO REOPEN AND SET ASIDE SUMMARY JUDGMENT PUIRSUANT TO FEDERAL RULES OF CIVIL PROCEDURE 60(d)(3)** will be effected through the Bankruptcy Noticing Center to each party listed below:

By CM/ECF to:

- Mark MiddlemasECFmailDistGroup@Lundbergfirm.com
- Lon Jenkins trecfmail@ch13ut.org
- United States Trustee USTPRegion19.SK.ECF@usdoj.gov

By U.S. Mail to:


Mark S. Middlemas
Lundberg & Associates
3269 South Main Street, Suite 100
Salt Lake City, UT 84115

Charles Coulson Waldo
6807 South 3420 West
West Jordan, UT 84084

Ethanne Waldo
6807 South 3420 West
West Jordan, UT 84084